UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOEL BENADERET,

        Plaintiff,

    v.                                     Case No. 19-cv-1141-pp

COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

        Defendant.

## ORDER AFFIRMING THE FINAL ADMINISTRATIVE DECISION OF THE COMMISSIONER

On August 7, 2019, the plaintiff, representing himself, filed a complaint seeking review of a final administrative decision that found him not "disabled" within the meaning of the Social Security Act. Dkt. No. 1. The Social Security Administration's Appeals Council denied review, making the Administrative Law Judge's (ALJ) decision the final decision of the Commissioner. For the reasons explained below, the court will affirm the Commissioner's decision.

## I.    Introduction

### A.    <u>Initial Claims</u>

The plaintiff filed an initial claim for child disability benefits on July 28, 2012 based on bipolar disorder, schizophrenia, anxiety disorder, obsessive compulsive disorder and an eating disorder. Dkt. No. 10-4 at 4. Two months later, the plaintiff filed an initial claim for disability insurance. <u>Id.</u> at 16. He alleged onset dates of June 5, 2008 for both claims. <u>Id.</u> at 4, 16. Concluding

1

that he was not disabled within the meaning of the Social Security Act, the Social Security Administration (Administration) initially denied the plaintiff's claim for disability benefits and supplemental security income on March 22, 2013. Dkt. No. 10-4 at 14, 26; Dkt. No. 10-5 at 2, 6. On September 10, 2013, the Administration denied the plaintiff's claims on reconsideration. Dkt. No. 10-4 at 28, 43.

B.     The ALJ's September 9, 2015 Decision

On October 1, 2013, the plaintiff filed a written request for a hearing in front of an ALJ. Dkt. No. 10-5 at 16. On August 28, 2015, the plaintiff appeared at the hearing with Attorney Leah A. Drexler-Dreis. Dkt. No. 10-4 at 63. Both the petitioner and Vocational Expert Richard Riedl testified. Dkt. No. 10-23 at 10. ALJ Brent Bedwell issued his decision on September 9, 2015. Dkt. No. 10-4 at 60. He found that the plaintiff "was born on March 24, 1990," and "ha[d] at least a high school education." Id. at 72. The ALJ observed that the plaintiff earned $1,873 folding fabric in 2011. Id. at 65. The ALJ concluded that the plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act from June 5, 2008, through the date of this decision." Id. at 63. While the ALJ conceded that the plaintiff had severe impairments, id. at 65, he concluded that the plaintiff (1) lacked an impairment or combination of impairments that met or medically equaled the severity of a listing, id. at 66; (2) had the residual functional capacity (RFC) to perform a full range of work at all exertional levels with nonexertional limitations, id. at 67; and (3) could perform

jobs that existed in significant numbers in the national economy, id. at 73. On April 17, 2017, the Appeals Council denied review. Dkt. No. 10-22 at 6.

C.  Benaderet v. Commissioner, Case No. 17-cv-844-pp

On June 16, 2017, the plaintiff, representing himself, filed a complaint seeking this court's review of the ALJ's September 9, 2015 decision. Benaderet v. Commissioner, Case No. 17-cv-844-pp (E.D. Wis.), Dkt. No. 1. The complaint argued that "unanimous and compelling" opinion evidence showed that the plaintiff suffered from chronic, severe and debilitating disorders which "inhibit[ed] his ability to function on a daily basis and certainly impede[d] any possibility to perform any kind of work, even on a limited basis." Dkt. No. 1 at 4. He alleged that "[t]he Judge and social security staff at his hearing did not address any of these issues and weighted the case in their favor ignoring and discrediting previous doctors reports. His family was denied access to speak on his behalf." Id.

On December 28, 2017, the plaintiff filed an opening brief. Dkt. No. 14. It appeared that the plaintiff's father had written and signed the brief. Id. at 4. The plaintiff's father argued that the Administration unfairly denied benefits. Id. at 1. He asserted that "[i]t would be impossible for those reviewing [the plaintiff's] file or meeting with him for a brief time in court to have any understanding of his complex condition." Id. He contended that the ALJ "clearly failed to acknowledge the evidence as presented in his personal medical history," and that neither the ALJ nor the vocational expert understood or acknowledged "the depth of the condition and why financial assistance in the

3

form of Social Security Disability [was] needed." Id. The plaintiff's father said that an attached letter from James Simmerer showed Mr. Simmerer's "assessment and summery of [the plaintiff's] condition." Id. at 2.

The plaintiff's father stressed that the plaintiff's conditions and symptoms were more severe than the plaintiff described during his hearing testimony. Id. He argued that the ALJ "attempted to determine that [the plaintiff] did not meet the SSI threshold for mental health disability where we strongly feel, when presented more relative and pertinent information, the determination would strongly weigh in the plaintiff's favor." Id. In a "Statement of Errors," the plaintiff's father asserted that (1) Attorney Drexler-Dreis did not allow him to participate in the hearing; (2) the ALJ did not allow James Simmerer to testify; (3) Attorney Drexler-Dreis's statements at the hearing were "inexplicably brief;" (4) the plaintiff could not perform the jobs that the vocational expert highlighted at the hearing; and (5) the fact that the plaintiff had folded fabric, played basketball, walked with his mom and reported to treatment providers that he was in a good mood or felt better did not relate to his ability to search for or perform work. Id. at 3. The plaintiff's father concluded that the ALJ "ignored conclusive evidence" and "counsel failed to represent him fairly." Id.

On February 5, 2018, the defendant filed a motion asking the court to remand the case for further administrative action under "sentence four[1]  of

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a

section 205(g) of the Social Security Act." Dkt. No. 16 at 1. The defendant asserted that "a remand [was] needed to reevaluate the medical opinion and other source opinion evidence, reassess Plaintiff's residual functional capacity, and reassess his substance-abuse disorder." Id.

On April 30, 2018, this court granted the defendant's motion for remand. Dkt. No. 18. Noting that the plaintiff had not responded to the motion, the court agreed that the administrative record supported a sentence four remand "[b]ased on the errors identified by the defendant." Id. at 1-2. In the order, the court observed that the plaintiff's father had filed the opening brief, clarifying that

> [t]he plaintiff's father is not a party, and it is unclear whether he is an attorney. Section 1654 provides that the parties may "plead and conduct their own cases personally or by counsel," 28 U.S.C. §1654, and Rule 11 requires that every motion be signed by an attorney or a party who is representing himself. But see Elustra v. Mineo, 595 F.3d 699, 705 (7th Cir. 2010) (acknowledging that other circuits have recognized a few exceptions to the general rule that a person may only appear pro se or through counsel, such as parents bringing claims on behalf of their children in an effort to secure Social Security benefits).

Id. at 1-2 n.1.

D.     June 17, 2018 Remand

Based on this court's April 30, 2018 order, the Appeals Council remanded the case back to an ALJ on June 17, 2018. Benaderet v. Commissioner, Case No. 19-cv-1141-pp (E.D. Wis.), Dkt. No. 10-22 at 4-5. The Appeals Council directed the ALJ to address several issues on remand; it found

---

rehearing." Huber v. Astrue, 395 F. App'x 299, 300 (7th Cir. 2010) (quoting 42 U.S.C. §405(g)).

that "[t]he hearing decision did not contain an adequate evaluation of the opinions of James Simmerer, LCSW and Staci O'Dell, APNP." Id. at 4. It remarked that the ALJ "did not address Mr. Simmerer's opinion that the claimant's inability to work was not primarily due to his substance abuse, but rather due to longstanding severe mental illness and disability." Id. According to the Appeals Council, the ALJ "did not address Ms. O'Dell's opinion that the claimant would withdraw from work tasks due to anxiety, dependent on symptoms, several times a week or more often." Id. Regarding the ALJ's RFC determination, the Appeals Council determined that "the decision did not contain sufficient rationale with specific references to evidence of record in support of the assessed limitations." Id. at 5. It explained that the ALJ "gave 'some weight' to the opinions of State Agency consultant David Biscardi, Ph.D. . . . but did not accept or reject his opinion that the claimant retained the capacity to understand, remember, carry out and sustain performance of one to three step tasks, but would become overwhelmed if the procedures were more complicated, complete a normal workday, interact briefly/superficially with coworkers/supervisors and adapt to changes/stressors associated with simple routine competitive work activities." Id. The Appeals Council opined that "[i]f accepted, these opinions could result in more limitations in the residual functional capacity assessment," and that "[f]urther evaluation of the claimant's residual functional capacity [was] warranted." Id.

Finally, the Appeals Council directed that on remand, the ALJ should further consider the plaintiff's maximum RFC "during the entire period at issue

and provide rationale with specific references to evidence of record in support of assessed limitations," and "[i]f warranted, conduct the further proceedings required to determine whether drug addiction is a contributing factor material to the finding of disability." Id. The Appeals Council clarified that in the RFC determination, the ALJ should "further evaluate the other medical source opinions and nonexamining source opinions in accordance with the provisions of (20 CFR 404.1527 and 416.927), and explain the weight given to such opinion evidence." Id.

> E.     The ALJ's April 10, 2019 Decision

On November 28, 2018, ALJ Brent Bedwell held a hearing. Dkt. No. 10-21 at 42. The plaintiff appeared *pro se* and testified; the plaintiff's mother, the plaintiff's father and vocational expert Catherine Anderson also testified. Id. at 20, 42. The ALJ issued his decision on April 10, 2019. Id. at 17. As he did in the 2015 hearing, the ALJ concluded that the plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act from June 5, 2008 through the date of this decision." Id. at 21.

In a form that the plaintiff dated June 7, 2019, the plaintiff requested that the Appeals Council review the ALJ's decision. Id. at 5. Three weeks later, the Appeals Council stated that it had received the plaintiff's exceptions on June 10, 2019. Id. at 2. It explained that its rules required a claimant to "file exceptions or ask for more time to do so within 30 days of the date [the claimant] receive[d] the Administrative Law Judge's decision." Id. Based on the

7

date of the ALJ's decision, the Appeals Council found the plaintiff's exceptions untimely. Id.

F.      Benaderet v. Commissioner, Case No. 19-cv-1141-pp

On August 7, 2019, the plaintiff filed a complaint seeking this court's review of the ALJ's April 10, 2019 decision. Dkt. No. 1. On November 26, 2019, the plaintiff filed an opening brief. Dkt. No. 11. On February 11, 2020, the defendant filed a motion to strike that brief, arguing that the plaintiff's non-attorney father had written and signed it on behalf of the plaintiff. Dkt. No. 16. On July 20, 2020, the court granted the defendant's motion, explaining again that a non-lawyer may not file motions or sign documents on behalf of a party in federal court. Dkt. No. 18.

On August 20, 2020, the plaintiff filed a new opening brief. Dkt. No. 19. The plaintiff argued that attached letters from treating counselors and doctors showed that he was unable to work. Id. at 1. He argued that "Judge Bidwell does not seem to understand how severe [the plaintiff's] issues are and seems to be biased about [the plaintiff's] past." Id. The plaintiff asked the court to

> send me to an SSI doctor to have my mental health issues evaluated. I personally or directly don't remember ever being evaluated by any doctor from Social Security. I would welcome the court to send me to an SSI doctor to have my mental health issues reevaluated.

Id. The plaintiff attached to the brief (1) a November 7, 2019 letter from Nicole Laabs, a medical provider working for Milwaukee Health Services; (2) a January 18, 2019 letter from Mirta Cabrera, an employee of Milwaukee Health Services; (3) a portion of a decision in a Social Security case from the Western District of

Michigan; and (4) two pages of the transcript of the plaintiff's November 28, 2018 hearing in front of the ALJ. Dkt. No. 19-1.

In his reply brief, the plaintiff wrote:

Over the many years I have seen countless psychiatrists and doctors and the overwhelming response is I have many existing mental health conditions and I am not able to work in any capacity.

I have submitted these documents that support the condition and they have been ignored.

I need this very badly because I have severe mental illness problems.

All of my conditions exist after many years of sobriety.

My voice was not heard in court each time by this judge.

Dkt. No. 25 at 1. Despite the court's July 20, 2020 order granting the defendant's motion to strike a brief that the plaintiff's father had written and signed, the plaintiff's father wrote and signed the majority of the plaintiff's reply brief. Id. at 3-6. In that portion of the reply brief, the plaintiff's father argued that the ALJ erred when he (1) underweighted the opinion of James Simmerer; (2) overweighted the opinions of Drs. Clark and Biscardi; and (3) rendered an opinion based on bias and prejudice. Id. at 4-5.

For the purpose of addressing all potential issues, the court will construe the plaintiff's briefs as arguing that (1) the ALJ erred at Step Three in determining that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listings; (2) the ALJ erred at Step Four in formulating the plaintiff's RFC; (3) the ALJ improperly weighed opinion evidence; (4) the ALJ should have ordered a

9

medical examination; (5) the ALJ improperly ignored evidence; and (6) the ALJ was impermissibly biased against the plaintiff.

## II.  Analysis

### A.  Standard of Review

When the Appeals Council denies a plaintiff's request review, the ALJ's decision constitutes the final decision of the Commissioner. Gedatus v. Saul, 994 F.3d 893, 898 (7th Cir. 2021). 42 U.S.C. §405(g) limits the court's review; the court will reverse only if the ALJ's decision is not supported by substantial evidence, is based on legal error, or is so poorly articulated as to prevent meaningful review. Hopgood ex rel. L.G. v. Astrue, 578 F.3d 696, 698 (7th Cir. 2009). "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." Id. (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). A decision denying benefits need not discuss every piece of evidence; however, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. Jelinek v. Astrue, 662 F.3d 805, 811 (7th Cir. 2011). If conflicting evidence in the record would allow reasonable minds to disagree about whether the plaintiff is disabled, the ALJ's decision to deny the application for benefits must be affirmed. Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008).

10

The district court must review the entire record, including both the evidence that supports the ALJ's conclusions and evidence that detracts from the ALJ's conclusions, but it may not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." Id. Indeed, "[u]nder the substantial-evidence standard, a court looks to an *existing* administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (emphasis added). Judicial review is limited to the rationales offered by the ALJ. Shauger v. Astrue, 675 F.3d 690, 697 (7th Cir. 2012) (citing SEC v. Chenery Corp., 318 U.S. 80, 93–95 (1943)). The ALJ must follow the Social Security Administration's rulings and regulations in making a determination. Failure to do so requires reversal unless the error is harmless. See Prochaska v. Barnhart, 454 F.3d 731, 736–37 (7th Cir. 2006). A reviewing court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." Burmester v. Berryhill, 920 F.3d 507, 510 (7th Cir. 2019) (quoting Lopez *ex rel.* Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003)). In sum, the district court will uphold a decision so long as the record reasonably supports it and the ALJ explains his analysis of the evidence with enough detail and clarity to permit meaningful review. Eichstadt v. Astrue, 534 F.3d 663, 665-66 (7th Cir. 2008).

B.    Disability Determination

1.    *Legal Framework*

The Social Security Administration provides "disability insurance benefits and supplemental security income to persons who have a 'disability.'" Barnhart v. Thomas, 540 U.S. 20, 22 (2003) (citing 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B)). To qualify as "disabled," the plaintiff must demonstrate a "physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at 21-22. The Social Security Act defines "disability" as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

In evaluating a claim for disability benefits, the ALJ must follow a five-step, sequential process. Apke v. Saul, 817 F. App'x 252, 255 (7th Cir. 2020). At step one, "the ALJ must determine whether the claimant was engaged in substantial gainful activity." Id. (citing 20 C.F.R. §§404.1520(b), 416.920(b)). At step two, "the ALJ must assess whether the claimant has a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" Id. (citing 20 C.F.R. §§404.1520(c), 416.920(c)). At step three, "the ALJ must evaluate whether the claimant's impairment or combination of

12

impairments is of a severity to meet or medically equal the criteria of an impairment listed in the regulations." Id. (citing 20 C.F.R. §§404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). "Before moving onto the next step, the ALJ must also consider the claimant's residual functional capacity, which is assessed by considering all claimed impairments including those that are not severe." Id. (citing 20 C.F.R. §§404.1520(e), 404.1545, 416.920(e), 416.945). At step four, "the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of [his] past relevant work." Id. (citing 20 C.F.R. §§404.1520(f), 416.920(f)). "Finally, the ALJ must assess whether the claimant is able to do any other work by considering [his] residual functional capacity, age, education, and work experience." Id. (citing 20 C.F.R §§404.1520(g), 416.920(g)). If it appears at any step that the claimant is not disabled, the analysis ends. 20 C.F.R. §404.1520(a)(4). The claimant bears the burden of proof at steps one through four; at step five, the burden shifts to the Commissioner. Ghiselli v. Colvin, 837 F.3d 771, 776 (7th Cir. 2016) (citing Butera v. Apfel, 173 F.3d 1049, 1054 (7th Cir. 1999)).

2.    *The ALJ's April 10, 2019 Decision*

At step one, the ALJ found that the plaintiff had worked after the alleged disability onset date, but that his income did not rise to the level of substantial gainful activity. Dkt. No. 10-21 at 22-23. At step two, the ALJ noted that the plaintiff suffered from several severe impairments; he found that the plaintiff had affective disorder, anxiety disorder, personality disorder and a history of

13

drug abuse. Id. at 23. At step three, the ALJ observed that the plaintiff's medically determinable severe impairments significantly limited his ability to perform basic work activities as required by SSR 85-28; however, he determined that none of the impairments or combination of impairments met or medically equaled "the criteria of listings 12.04, 12.06 or 12.08." Id.

In calculating the plaintiff's RFC, the ALJ concluded that the plaintiff "benefitted from treatment and abstention from drug use and was able to manage a range of daily activity and functioning." Id. at 32. He found that the plaintiff "remained capable of performing unskilled work with additional accommodations for symptoms related to his mental impairments," and that "the objective medical findings [were] not consistent with a finding of disability." Id. At step four, the ALJ concluded that the plaintiff lacked past relevant work history. Id. At step 5, in determining whether jobs exist in the national economy that the claimant could perform, the ALJ noted that "[the plaintiff's] ability to perform work at all exertional levels has been compromised by nonexertional limitations." Id. at 33. The ALJ concluded that the plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id.

C.    Meeting or Medically Equaling a Regulatory Listing

The plaintiff argues that the ALJ did not "seem to understand how severe [the plaintiff's] issues are." Dkt. No. 19 at 1. At step two, the ALJ acknowledged that the plaintiff had multiple severe impairments limiting the plaintiff's ability to perform basic work activities under SSR 85-28; he found that the plaintiff

14

had affective disorder, anxiety disorder, personality disorder and a history of drug abuse. Dkt. No. 10-21 at 23. At step three, however, the ALJ concluded that the plaintiff did not have an impairment or combination of impairments that met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Id. Specifically, the ALJ concluded that "[the plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08." Id. The court construes the plaintiff's argument that the ALJ failed to understand the severity of his impairments as a claim that the ALJ lacked substantial evidence to support his findings at step three.

Again, the plaintiff bears the burden of proof at step three. Weatherbee v. Astrue, 649 F.3d 565, 569 (7th Cir. 2011). "To determine whether an individual is disabled at step 3, an ALJ must follow 20 C.F.R. § 404.1529(d)(3), which describes how the agency decides whether the individual's impairment or combination of impairments are medically equal in severity to an impairment on the list of pre-determined disabling impairments." Curvin v. Colvin, 778 F.3d 645, 650 (7th Cir. 2015). "[T]he agency will consider whether an individual's symptoms and objective medical evidence are equal in severity to those of a listed impairment." Id. Under §404.1529(d)(3), the agency considers medical equivalence based on all evidence in the record relevant to a claimant's impairments and their effects. "However, [the agency] will not substitute [a claimant's] allegations of pain or other symptoms for a missing or deficient sign

15

or laboratory finding to raise the severity of [the claimant's] impairment(s) to that of a listed impairment." Curvin, 778 F.3d at 650.

At step three, the ALJ determined that the plaintiff's impairments did not meet or medically equal the criteria of listings 12.04, 12.06 and 12.08. Dkt. No. 10-21 at 23. He considered the paragraph B criteria, which provide that a claimant can qualify under listings 12.04, 12.06 and 12.08 if the claimant has one extreme or two marked limitations in (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§12.04B, 12.06B, 12.08B. He considered the "paragraph C" criteria, which apply to listings 12.04 and 12.06, and states:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

See 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §12.04C.

With respect to the paragraph B criteria, the ALJ determined that the plaintiff had, at most, moderate limitation in each of the four areas. Dkt. No. 10-21 at 23.

16

1. *Understanding, remembering or applying information*

Citing function reports from February 27, 2013 and August 21, 2013, the ALJ noted the plaintiff's allegations "that his impairments affect his ability to understand at times, and that he has fair ability to follow both written and spoken instructions." Id. The ALJ's review of one of the 2013 function reports, medical records from Dr. Frederic Stieger and office treatment records from Milwaukee Health Services reflected that the plaintiff loved cooking, had a driver's license, could shop in stores and count change, helped his father at work, built models, watched television, played video games and had an intact memory. Id.

2. *Interacting with others*

Referring to the August 21, 2013 function report, the ALJ noted the plaintiff's claim that he had anxiety and did not enjoy being around people. Id. The ALJ also factored in the plaintiff's hearing testimony, statements to Dr. Stieger and July 2013 progress notes from The Bridge Health Clinics, finding that the plaintiff "reported that he has friends, is close to his brother and parents, spent time playing basketball and other sports, and shops in stores, albeit late at night." Id. He considered the plaintiff's mother's function report, which stated "that [the plaintiff] occasionally spends time with family, attends therapy appointments, and respects authority figures." Id.

3. *Concentrating, persisting or maintaining pace*

Referring again to the August 21, 2013 function report, the ALJ noted the plaintiff's allegation that he could not pay attention for long periods or

finish tasks. Id. at 23-24. Under the same function report, Dr. Steiger's records, progress notes from The Bridge Health Clinics, and Mirta Cabrera's January 4, 2019 office treatment records from Milwaukee Health Services, the ALJ found that the plaintiff "acknowledged that he is able to drive a vehicle and count change, loves cooking, watches television and movies, plays video games, builds models, and plays some basketball and other sports." Id. at 24.

### 4. *Adapting or managing oneself*

Under the plaintiff's August 21, 2013 function report, the ALJ observed that the plaintiff "reported difficulty handling stress and changes in routine." Id. However, the same function report, Mirta Cabrera's January 4, 2019 office treatment records and the plaintiff's hearing testimony indicated that the plaintiff lived independently, held a driver's license, loved to cook and attended scheduled appointments. Id. The ALJ found that while the plaintiff's psychiatrist had observed the plaintiff's occasional unkempt appearance, Mirta Cabrera's records also reflected that the plaintiff was "appropriately dressed and well groomed," and was "cooperative and ha[d] appropriate mood and affect, even when reporting increased symptoms of anxiety." Id.

Because the ALJ concluded that the plaintiff's impairments did not cause at least two marked limitations or one extreme limitation, he found that the paragraph B criteria were not satisfied. Id. The ALJ also found that the paragraph C criteria were not satisfied, stating that "the record [did] not establish that [the plaintiff] has only marginal adjustment, that is, a minimal

18

capacity to adapt to changes in the claimant's environment or to demands that are not already part of [the plaintiff's] daily life." Id.

The plaintiff has not presented evidence of a marked or extreme limitation in any of the four areas of the paragraph B criteria or marginal adjustment, nor has he identified any error in the ALJ's reasoning. The record does not contain medical opinions showing limitations greater than those found by the ALJ. Without a limitation greater than moderate in any of the four paragraph B criteria, the plaintiff could not have met or medically equaled any of the relevant listings. Substantial evidence supports the ALJ's findings.

The court understands that the plaintiff, and his family, have consistently and vehemently asserted that the plaintiff's conditions are more severe, and affect him more severely, than the medical record shows and than the plaintiff has been able to convey during his testimony at the hearings. They feel that the ALJ has ignored their descriptions of the plaintiff's conditions and abilities. But the law requires the ALJ to consider more than just the plaintiff's own accounts and those of his family. The ALJ was correct to rely on the records that influenced his determination.

D.    RFC Determination

The plaintiff argues that he is "not able to work in any capacity." Dkt. No. 25 at 1. The court assumes that the plaintiff means to argue that the ALJ's determination of the plaintiff's RFC is unsupported by substantial evidence.

While the ALJ concluded that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms of

which the plaintiff complained, he found that the plaintiff's statements regarding the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Dkt. No. 10-21 at 25. The ALJ reasoned that the medical record inadequately supported the plaintiff's allegations of disabling symptoms, and that the plaintiff's own reported activity suggested that he had more mental capacity and functioning than he alleged. Id.

The ALJ found that the plaintiff had affective disorders, anxiety disorder, personality disorder and a history of drug abuse. Id. Reviewing a March 29, 2011 substance abuse assessment from Aurora Health Care, Dr. Steiger's medical records, Dr. Bhaskar Arya's November 9, 2012 behavioral medicine discharge summary and progress notes from The Bridge Health Clinics, the ALJ observed that treating physicians had diagnosed the plaintiff with depressive disorder, not otherwise specified; anxiety disorder, not otherwise specified; bipolar mood disorder; bipolar disorder, not otherwise specified; personality disorder, not otherwise specified; a history of polysubstance abuse and dependence; opioid dependence or opioid dependence history; and alcohol abuse. Id. The ALJ cited reports of the plaintiff's drug use in a September 11, 2008 intake assessment at Aurora Psychiatric Hospital; the March 29, 2011 substance abuse assessment; and a February 4, 2012 psychiatric evaluation at Rogers Memorial Hospital. Id. He considered the plaintiff's psychotherapy and psychiatric medication described in Tungseth Psychotherapy Clinic records, Dr. Steiger's records and The Bridge Health Clinic records. Id. The ALJ

20

considered records from Rogers Memorial, Ravenswood Clinic and Columbia St. Mary's showing the plaintiff's alcohol and drug abuse treatment. Id.

But the ALJ determined that the record also showed "[the plaintiff's] mental condition and functioning significantly improved while he was compliant with treatment." Id. Referring to a September 11, 2008 intake assessment at Aurora Psychiatric Hospital, the ALJ recounted that

> the treating therapist's mental status exam revealed that the claimant was oriented times three; his recent and remote memory were good; his concentration and attention were good; he did not have any perceptual disorders or hallucinations; his insight and judgment were fair; his thought content and thought process were unremarkable; his behavior and speech were unremarkable; his mood was "happy" and unremarkable, and his affect was happy.

Id. at 25-26. The ALJ discussed similar observations of a treating therapist from the substance abuse assessment on March 29, 2011:

> [T]he treating therapist's mental exam revealed that the claimant was oriented to person, place, and time; his concentration and attention were fair; he had no perceptual disorders or hallucinations; his insight and judgment were fair; his thought content was unremarkable, but he was a poor historian; his thought process was unremarkable and directed; his appearance, behavior, and speech were unremarkable; his mood was euthymic; his affect was flat; and he was independent in his activities of daily living.

Id. at 26. Citing Dr. Steiger's records, the ALJ noted the plaintiff's reports throughout 2011 that he was not using opiates, his conditions were improving and his medications were effective. Id. The ALJ outlined a pattern of the plaintiff's improvements and setbacks depending on his sobriety and compliance with treatment; in doing so, the ALJ referenced records from Rogers Memorial Hospital, the Milwaukee County Behavioral Health Division, Columbia St. Mary's Hospital, The Bridge Health Clinics, Davis Medical Clinic,

21

Outreach Community Health Center, Stevanovic Clinics and the Milwaukee Secure Detention Facility. Id. at 26-29. For example, the ALJ explained that the plaintiff arrived at Rogers Memorial Hospital on January 22, 2012 following self-reports of suicidal ideation. Id. at 26. Upon his arrival, the plaintiff "admitted that he had been abusing intravenous heroin for the last three months." Id. At that time the plaintiff registered a Global Assessment of Functioning (GAF)[2] score of 25, "indicating that there was some danger of him hurting himself or others, an occasional failure to maintain minimal personal hygiene, or gross impairment in communication." Id. During his hospitalization, the plaintiff received treatment that included the administration of Depakote, and his condition improved. Id. Upon the plaintiff's discharge less than two weeks later, the plaintiff "denied any suicidal ideation, homicidal ideation, or psychotic symptoms," and the treating physician reported a GAF score of 55, "indicating no more than moderate symptoms or difficulties in functioning." Id. This pattern continued from 2012 through 2015. Id. at 26-29.

> The ALJ concluded that
>
> [t]he above medical evidence confirms that the claimant has had ongoing drug abuse with repeated relapses despite treatment. While he clearly did better when he followed treatment recommendations and did not use drugs, the claimant continued to do so despite access to treatment. Indeed, the claimant testified in August 2015 that medication was helpful for his symptoms, but also stated he only felt good when he was taking drugs. The claimant reported in

---

[2] "The GAF score is a numeric scale of 0 through 100 used to assess severity of symptoms and functional level." Yurt v. Colvin, 758 F.3d 850, 853 n.2 (7th Cir. 2014).

August 2015 that he continued to be on probation for theft and had stolen things in order to have money to buy drugs.

Id. at 29.

Referring to records from Milwaukee Health Services, the ALJ found that with treatment and abstention from drug use, the plaintiff's improvement continued through 2018; the ALJ discussed how those records showed that the claimant (1) established treatment with new providers, (2) was sleeping better, (3) "was thinking about attending classes and getting a job," (4) had an unremarkable mental status examination, (5) "easily performed serial 7s, described current events, aptly interpreted proverbs, and could name simple objects, perform simple instructions, follow a series of instructions, write a sentence and copy geometric shapes and a clock," (6) "was cleared to work," (7) "was consistently oriented, with largely intact memory, and general intellect consistent with his education," (8) felt "much better with the addition of alprazolam," and (9) reported that "he was no longer significantly depressed, had normal diet and sleep, improved energy and concentration, and increased interest in activities." Id. The ALJ noted that "[d]espite abnormalities," the plaintiff "retained largely normal mental status" through 2019. Id.

The ALJ discounted the plaintiff's reports concerning the intensity, persistence and limiting effects of his symptoms, finding them not entirely consistent with the overall evidence. Id. at 30. Reviewing the plaintiff's medical records, the ALJ observed that in the absence of substance use, (1) the plaintiff's symptoms "improved with routine and conservative treatment," (2) the plaintiff had not "required urgent, emergency or inpatient treatment," and

(3) the plaintiff "retained reasonable mental status while abstaining from opioid abuse." Id. And the ALJ found that the nature and scope of the plaintiff's reported activities suggested greater mental capacity than alleged. Id.

The plaintiff's activities demonstrated to the ALJ that despite experiencing symptoms of his mental impairments, the plaintiff remained able to engage in several day-to-day activities involving some of the mental abilities and social interactions necessary for obtaining and maintaining employment. The ALJ concluded that the plaintiff's impairments and symptoms did not prevent him from performing jobs that (1) are unskilled and involve simple, routine tasks; (2) have only occasional changes in work setting and decision making; and (3) demand no interaction with the public and only occasional interaction with supervisors and coworkers. Id.

Regarding the opinions of state agency consultants Drs. Clark and Biscardi, the ALJ considered them "largely consistent with the overall evidence." Id. at 31. The ALJ found that the opinions appropriately balanced the plaintiff's subjective reports and "intermittent abnormalities in mental status" with (1) his medical history showing improvement when sober and compliant with treatment, and (2) his reported activities, "which have included driving, assisting his father, spending time with his brother, cooking, and leaving his home as necessary for appointments and shopping." Id. Referring to Dr. Biscardi's conclusion that the plaintiff could perform "1-3 step tasks and his concern that the claimant would become overwhelmed if the procedures were more complicated," the ALJ stated that the conclusion was "fully

accommodated" by the RFC determination. Id. The ALJ concluded that because "[the plaintiff's] history of appropriate interaction with treating providers and participation in sports demonstrates that [the plaintiff's] limitations are adequately accommodated by a limitation to work requiring only occasional interaction with coworkers and supervisors," the RFC finding reflected the opinions of Drs. Clark and Biscardi. Id.

Turning to the August 2013 opinion of treating therapist James Simmerer, the ALJ clarified that Mr. Simmerer was not an acceptable medical source,[3] and his opinion "lack[ed] a function-by-function analysis and address[ed] a determination reserved for the Commissioner." Id. at 31. The ALJ stressed that "Mr. Simmerer's treatment notes indicate that he provided counseling to both [the plaintiff] and his father and that prior to rendering his August 2013 opinion, Mr. Simmerer had last seen [the plaintiff] years before." Id. Favoring "first-hand observations" of treating physicians over an opinion based on "conversations with [the plaintiff's] father," the ALJ gave the opinion little weight.

The ALJ similarly gave little weight to the opinion of nurse practitioner Staci O'Dell, stating that she was not an acceptable medical source and "expressly noted that she had only met with [the plaintiff] on four occasions

---

[3] "Accepted medical source" is a Social Security term of art. Under 20 CFR §404.1502(a), the Administration provides a list of "acceptable medical sources," including licensed physicians, licensed psychologists, licensed advanced practice registered nurses and licensed physician's assistants. A person may be highly qualified in his or her field, but not be an "accepted medical source" because he or she does not hold one of the positions listed in the regulation.

prior to rendering her opinion and was unable to assess [the plaintiff's] mental functioning in a number of areas." Id. at 31-32. In the opinion of the ALJ, O'Dell's determination that the plaintiff experienced only mild limitations in pace, persistence and concentration was inconsistent "with her finding that he might withdraw from tasks with only occasional interaction with others." Id. at 32. He noted that O'Dell's report mentioned that the plaintiff "was obtaining multiple medications, including controlled substances, from multiple providers and not showing up for a drug screen." Id.

While the ALJ considered the GAF scores in the record, he found them to present "limited evidentiary value;" the ALJ reasoned that they "reveal[ed] only snapshots of impaired and improved behavior."[4] Id. Again, the ALJ "[gave] more weight to the objective details and chronology of the record," finding that they "more accurately describe[d] [the plaintiff's] impairments and limitations." Id. Last, the ALJ considered hearing testimony from the plaintiff's parents, third-party function reports of the plaintiff's mother and correspondence from his father. Id. While the ALJ found these statements largely consistent with those of the plaintiff, the ALJ found that the plaintiff's claims regarding "the intensity, persistence and limiting effects of his symptoms not entirely

---

[4] The Seventh Circuit has held that "GAF scores, defined in AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (Text Revision, 4th ed. 2000), are 'useful for planning treatment,' and are measures of both severity of symptoms *and* functional level. Because the 'final GAF rating always reflects the worse of the two,' the score does not reflect the clinician's opinion of functional capacity. Accordingly, 'nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score.'" Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010) (citations omitted).

consistent with the objective evidence documenting his response to treatment when sober and compliant and his activities of daily living, which show him to be a reasonably functional individual." Id.

Under the standard of review applicable to this court, the court cannot conclude that the ALJ's conclusion concerning the plaintiff's RFC is unsupported by substantial evidence. Ultimately, the ALJ found that the plaintiff benefitted from sobriety and treatment sufficient to perform a particular range of jobs in the national economy. His decision provided an accurate and logical bridge from the evidence to that finding. While the ALJ relied on some medical opinions and gave little weight to others, he provided adequate support for doing so. This court cannot find reversible error in any of the rationales that the ALJ offered in his decision.

Again, the court understands that the ALJ's discussion of the plaintiff's struggles with controlled substances sounds judgmental. The plaintiff feels that the ALJ has dismissed his accounts of his impairments and abilities because the ALJ has concluded that he is a bad person in some way, a former drug user and thus not to be trusted. But the law required the ALJ to consider the impact of the plaintiff's drug use—when he was using drugs—on the plaintiff's functioning, just as it required him to consider the impact of the plaintiff's sobriety on his functioning. The ALJ could not otherwise do his job. For whatever it is worth, this court does not believe that the ALJ discounted the plaintiff's testimony (or his family's), or found the plaintiff less credible, based on a moral judgment about the plaintiff's past drug use. The record indicates

that the ALJ based his decision on the history reflected in the medical records, and that history included evidence that the plaintiff's impairments impacted him less severely when he was not using controlled substances. That is not a moral judgment, or even a criticism of the plaintiff. It is a medical fact on which the ALJ was entitled to rely.

     E.    <u>Weighing of Opinion Evidence</u>

The plaintiff argues that the ALJ gave too little weight to the opinion of James Simmerer and too much to the opinions of state agency consultants Drs. Clark and Biscardi. Dkt. No. 25 at 4-5. The plaintiff waived these arguments by raising them for the first time in his reply brief. <u>Carter v. Astrue</u>, 413 F. App'x 899, 906 (7th Cir. 2011) (citing <u>United States v. Lupton</u>, 620 F.3d 790, 807 (7th Cir. 2010)). Even if the plaintiff had raised them in his initial brief, however, the arguments would not warrant remand.

Under 20 C.F.R. §404.1527(c)(2), the agency generally gives more weight "to medical opinions from [] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." The agency gives controlling weight to a treating physician's opinion on the nature and severity of impairments if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §404.1527(c)(2).

28

The plaintiff asserts that even though "Mr. Simmerer is a very experienced counselor," the ALJ refused to accept Mr. Simmerer's credentials at the hearing. Dkt. No. 25 at 4. Under 20 C.F.R. §404.1527(c)(1), the ALJ generally gives more weight to the medical opinion of a physician who examined the plaintiff at least once than the opinion of a physician who never examined the plaintiff at all. Nonetheless, "an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." Beardsley v. Colvin, 758 F.3d 834, 839 (7th Cir. 2014). An ALJ may consider opinions from treatment providers who are not "acceptable medical sources" using the same factors he uses to evaluate treatment providers who are "acceptable medical sources"; those factors include (1) the length, nature, and extent of the claimant's relationship with the therapist, (2) the frequency of examination, (3) whether the opinion is supported by relevant evidence, (4) the opinion's consistency with the record as a whole, and (5) whether the therapist is a specialist. See 20 C.F.R. §§404.1527(f)(1), 416.927(f)(1); SSR No. 06-3p, 2006 SSR LEXIS 5, at *10–11 (citing §§404.1527(d), 416.927(d)). The ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." 20 C.F.R. §§404.1527(f)(2), 416.927(f)(2).

The ALJ considered and gave Mr. Simmerer's opinion little weight; he reasoned that (1) Mr. Simmerer was not an "acceptable medical source," (2) Mr.

29

Simmerer's opinion lacked "a function-by-function analysis," (3) Mr. Simmerer's opinion "address[ed] a determination reserved for the Commissioner," (4) Mr. Simmerer's notes indicated that he treated both the plaintiff and his father, and had last seen the plaintiff approximately three years before rendering his opinion, (5) Mr. Simmerer's treatment notes for the plaintiff's father indicated that the plaintiff was "in and out of substance addiction treatment in the intervening period," and (6) Mr. Simmerer's opinion conflicted with first-hand accounts in the medical record, and the ALJ gave those first-hand accounts greater weight. Dkt. No. 10-21 at 31.

The plaintiff disagrees with the ALJ's conclusions. But that disagreement is not sufficient to demonstrate error on the ALJ's part. The ALJ was correct that "counselors" do not appear on the list of "acceptable medical sources" in the Social Security regulation. The ALJ was entitled to consider whether Simmerer's report contained a function-by-function analysis. The ALJ's concern that Simmerer had not seen the plaintiff for three years before the report was a valid one. And the ALJ was entitled to give first-hand accounts greater weight. None of these means that Simmerer was not a good or experienced counselor. But that is not the standard the ALJ is required to follow. The plaintiff has not demonstrated that the ALJ erred in giving Simmerer's opinion little weight.

Regarding state agency consultants Drs. Clark and Biscardi, the plaintiff contends that "neither of these psychologist spent any considerable time with [the plaintiff] and there evaluations are based on

30

third party observations." Dkt. No. 25 at 4. The ALJ noted Dr. Clark's conclusion that the plaintiff had no limitations in understanding, memory and social interaction, and "no more than moderate limitations in sustained concentration and persistence and adaptation." Dkt. No. 10-21 at 30. He recalled that "Dr. Biscardi opined that [the plaintiff] [did] not have any limitation in understanding and memory, and no more than moderate limitations in sustained concentration and persistence, social interaction and adaptation." Id. The ALJ explained why he gave some weight to the state agency consultants:

> Their opinions are largely consistent with the overall evidence and appropriately balance the claimant's subjective reports and intermittent abnormalities in mental status with his treatment history demonstrating improvement in mental health symptoms and mental status with sobriety and treatment compliance; and reported activities, which have included driving, assisting his father, spending time with his brother, cooking, and leaving his home as necessary for appointments and shopping.

Id. at 31.

Even if the plaintiff is correct that the consulting agency doctors did not spend substantial time with him, the ALJ did not base his weighting on the amount of time the doctors had spent with the plaintiff. He based his decision on whether their opinions were consistent with the overall record. He found the opinions consistent, and the plaintiff has not identified any error in that finding.

F.   Ordering a Medical Examination

The plaintiff asks the court to

31

send me to an SSI doctor to have my mental health issues evaluated. I personally or directly don't remember ever being evaluated by any doctor from Social Security. I would welcome the court to send me to an SSI doctor to have my mental health issues reevaluated.

Dkt. No. 19 at 1.

A plaintiff bears the burden of submitting medical evidence establishing impairments and RFC. 20 C.F.R. §§404.1512(a), (c), 404.1513(a), (b), 404.1545(a)(3). If the record lacks adequate evidence, an ALJ may take steps to develop the record, including recontacting treatment providers or ordering a consultive exam. 20 C.F.R. §§404.1520b(b), 404.1520b(b)(2). The ALJ can order a consultive examination to resolve an inconsistency or when the record as a whole insufficiently supports a decision. 20 C.F.R. §§404.1519a(b), 416.919a(b). A court defers to an ALJ's decision as to how much evidence is adequate to fully develop the record and how to accomplish that goal. Poyck v. Astrue, 414 F. App'x 859, 861 (7th Cir. 2011) (citing Nelms v. Astrue, 553 F.3d 1093, 1098 (7th Cir. 2009)).

The plaintiff does not identify why the ALJ's failure to order such a medical exam constitutes reversible error. He does not show how such an exam would have changed the ALJ's decision due to an inconsistency or gap in the evidence. The record is adequate to support the ALJ's decision.

G.    Improperly Ignoring Evidence

The plaintiff contends that

Over the many years I have seen countless psychiatrists and doctors and the overwhelming response is I have many existing mental health conditions and I am not able to work in any capacity.

32

> I have submitted these documents that support the condition and they have been ignored.

Dkt. No. 25 at 1. The court construes this contention as a claim that the ALJ improperly ignored evidence. Again, the plaintiff waived this argument by raising it for the first time on reply. Even had the plaintiff raised this argument in his initial brief, the argument would fail.

"ALJs need not address every piece of evidence in the record, but an ALJ may not ignore an entire line of evidence contrary to her ruling." Reinaas v. Saul, 953 F.3d 461, 467 (7th Cir. 2020) (internal citations omitted). At the plaintiff's November 28, 2018 hearing, the ALJ admitted "all the documents [the ALJ] [had] in [the plaintiff's] file." Dkt. No. 10-21 at 50. In his decision, the ALJ stated that "[t]he claimant submitted or informed [him] about all written evidence at least five business days before the date of the claimant's scheduled hearing," and "[t]he record was held open following the hearing for the submission of additional medical evidence." Id. at 20. The plaintiff has not identified any specific document that the ALJ ignored. While the ALJ gave little weight to the opinions of Mr. Simmerer and Ms. O'Dell, the ALJ did not ignore them.

H.    Impermissible Bias

Asserting that the ALJ's decision resulted from "prejudice and pre existing sentiments towards dual diagnosis at the onset of the case," the plaintiff's father asks the court to remand the case "for an additional hearing with a different ALS judge where [they] hope to receive a fair and impartial hearing." Dkt. No. 25 at 3, 4. The plaintiff's father argues that prior to the 2015

33

hearing, the plaintiff's attorney stated that "[t]he Judge always has a difficult time making decisions in these type of cases where there is substance issues involved." Id. at 4. The plaintiff's father contends that this comment required the ALJ to recuse himself. Id. He states that he believes the plaintiff "would get a favorable outcome if we could present the facts at an unbiased hearing." Id. at 6. The plaintiff's father says that "Judge Brent C. Bedwell has denied 47% of disability cases on average in the past 2 years. That is 25% higher than Wisconsin and National averages for disability judges." Id.

"[B]ias cannot be inferred from a mere pattern of rulings by a judicial officer, but requires evidence that the officer had it in for the party for reasons unrelated to the officer's view of the law." Keith v. Barnhart, 473 F.3d 782, 789 (7th Cir. 2007) (quoting McLaughlin v. Union Oil Co., 869 F.2d 1039, 1047 (7th Cir.1989)). The plaintiff has not provided such evidence. The plaintiff's—and his father's—belief that the ALJ had a bias comes from a comment made by the plaintiff's attorney. The plaintiff has presented no evidence that this particular administrative law judge had a particular bias against the plaintiff—"had it in for him," as the Keith court phrased it.

It is clear to the court that the plaintiff's parents feel deeply, passionately concerned about their son. They are worried about him and about his ability to take care of himself. They feel that the Social Security system has not heard their voices, or their son's voice. The plaintiff, too, is frustrated and worried. He, and his family, feel that he has been discounted because he has struggled with drug use in the past. It feels to him as though the ALJ thought that he

34

was making up his conditions or being untruthful about them. It is difficult for the plaintiff and his family to understand how something that is so clear to them, so obvious, could not be as clear and obvious to the ALJ and to this court.

The plaintiff and his family are not the first ones to be stymied by the Social Security standards. This court has decided appeals in which plaintiffs have received Worker's Compensation, or a disability pension from the military or their former employer, yet did not qualify as disabled for the purposes of Social Security benefits. The court has heard from other plaintiffs frustrated by ALJs who did not perceive their impairments to be as severe as the plaintiffs or their families did.

Again, for whatever it may be worth, this court has no reason to believe that the plaintiff has made up his impairments (and the ALJ did not find that he did). The court has no reason to believe that the plaintiff is somehow less believable or less worthy of consideration because he has struggled with drug use in the past. The court has no reason to believe that the plaintiff's parents are not completely sincere in their descriptions of the plaintiff's impairments and the impact those impairments have on his abilities.

But this court acts as an appellate court in Social Security cases. It cannot make credibility determinations, or weigh evidence. It is limited to reviewing the rationales provided by the ALJ, and doing so under detailed standards articulated in a regulatory framework and in years of case law. In

that role, the court cannot conclude that the ALJ committed error warranting remand.

## III. Conclusion

The court concludes that the ALJ's findings were supported by substantial evidence and his credibility determination was not patently wrong. Accordingly, the court **ORDERS** that the final administrative decision of the Commissioner of Social Security, denying the plaintiff's application for disability benefits, is **AFFIRMED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 1st day of September, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**

Case 2:19-cv-01141-PP   Filed 09/01/21   Page 36 of 36   Document 30